**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

—————————

**No. 23-6348**

—————————

UNITED STATES OF AMERICA,

         Petitioner – Appellee,

    v.

THEODORE MACON CARRINGTON, JR.,

         Respondent – Appellant.

—————————

Appeal from the United States District Court for the Eastern District of North Carolina, at Raleigh.  Terrence W. Boyle, District Judge.  (5:22-hc-02093-BO)

—————————

Submitted:  September 7, 2023                Decided:  January 23, 2024

—————————

Before RICHARDSON and HEYTENS, Circuit Judges, and FLOYD, Senior Circuit Judge.

—————————

Affirmed by unpublished opinion.  Judge Richardson wrote the opinion, in which Judge Heytens and Senior Judge Floyd joined.  Judge Heytens wrote a concurring opinion.

—————————

**ON BRIEF:**  Mark A. Jones, BELL, DAVIS & PITT, PA, Winston-Salem, North Carolina, for Appellant.  Michael F. Easley, Jr., United States Attorney, Genna D. Petre, Special Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Raleigh, North Carolina, for Appellee.

—————————

Unpublished opinions are not binding precedent in this circuit.

RICHARDSON, Circuit Judge:

Theodore Carrington appeals the district court's civil-commitment order issued pursuant to 18 U.S.C. § 4246. He asks us to vacate the order because of an unreasonable delay in his prior § 4241(d) custody, which he thinks rendered his § 4246 proceedings untimely. But we find that Carrington failed to litigate this issue in the court below and thereby forfeited the right to raise it on appeal. We thus affirm the district court's order.

## I.    Background

This case involves the same parties and subject matter as *United States v. Carrington*, No. 22-7138 (4th Cir. Jan. 23, 2024). Most of the background is discussed in our opinion for that case. So we will dispense with the details here and provide only an overview of the relevant facts.

In January 2021, Theodore Carrington was indicted by the federal grand jury for the Middle District of North Carolina for transmitting a threatening communication in interstate commerce, in violation of 18 U.S.C. § 875(c). After conducting a hearing to determine Carrington's competency to stand trial, the district court issued an order on August 23, 2021, finding him incompetent to stand trial and committing him to the Attorney General's custody for hospitalization, pursuant to 18 U.S.C. § 4241(d). Carrington was then admitted to the Federal Medical Center in Butner, North Carolina, on January 18, 2022.

On May 20, 2022, the government filed a report with the Middle District finding Carrington incompetent and unrestorable. Six days later, the government filed a § 4246 certificate in the Eastern District of North Carolina. The government then moved to stay

2

proceedings in that court until the Middle District determined whether Carrington could be restored to competency. On June 29, 2022, the Eastern District granted the motion and stayed proceedings.

After some delay, the Middle District held a hearing on August 26, 2022. At the hearing, the government presented expert testimony to support its finding that Carrington was incompetent and unrestorable. Carrington, meanwhile, asked to "put on the record" that he objected to a supposedly unlawful delay in his custody, in violation of § 4241(d). Then, in a motion submitted to the court following the hearing, Carrington again noted the delay and explained that he was flagging this issue "for the purpose of further motion properly filed in the E.D.N.C. civil proceedings, maintaining and not waiving objection thereto." *Carrington*, slip op. at 16.

After considering Carrington's motion, the Middle District held that Carrington was incompetent, unrestorable, and "subject to the provisions of 18 U.S.C. § 4246." *Carrington*, slip op. at 16–17. It did not resolve his timeliness objections, noting instead that Carrington requested no action from the court but that he did not waive any objections for purposes of the civil-commitment proceedings. The court subsequently granted the government's motion to dismiss the indictment against Carrington without prejudice. Carrington timely appealed.

On November 17, 2022, the Eastern District lifted the stay and authorized the government to evaluate Carrington pursuant to §§ 4246(b) and 4247(b). The government submitted its report on January 3, 2023, which found that Carrington's delusional disorder created a substantial risk of bodily harm to others or serious damage to property. The

3

Eastern District then ordered a civil-commitment hearing for March 14, 2023. Carrington never moved to dismiss these proceedings based on an unreasonable delay in his § 4241(d) custody. At the hearing, the government presented expert testimony attesting to the findings in its report. Yet again Carrington never challenged the timeliness of the certificate. So, on March 20, 2023, the Eastern District adopted the government's report and committed Carrington to the Attorney General's custody pursuant to § 4246. Carrington timely appealed.

Given the similarities between Carrington's two appeals, we decided to hear oral argument for Carrington's criminal appeal but to dispense with oral argument for this one. In a published opinion issued today, we found that we lack jurisdiction over Carrington's criminal appeal. *Carrington*, slip op. at 17–28. Specifically, we determined that the Middle District's dismissal of Carrington's indictment is not a final judgment for purposes of 28 U.S.C. § 1291. And, after surveying the applicable statutes and the record before us, we concluded that the Middle District's order finding Carrington "subject to the provisions of § 4246" is not an appealable collateral order. The present unpublished opinion addresses Carrington's separate appeal from his civil-commitment proceedings before the Eastern District.

## II.    Discussion

In this appeal, Carrington argues that an unreasonable delay in his § 4241(d) custody undermined the Eastern District's authority to order his civil commitment. He contends that, pursuant to § 4241(d) and the Middle District's August 23, 2021 order, the government's legal custody over him terminated on December 23, 2021. Yet it was not

4

until five months later that the government filed a § 4246 certificate in the Eastern District court—nine months after he entered the Attorney General's custody.  Carrington believes that we are compelled to find this delay unreasonable based on *United States v. Wayda*, where we held that a six-month period of custody was unreasonable.  966 F.3d 294, 308 (4th Cir. 2020).  Carrington therefore asks that we vacate the Eastern District's civil-commitment order.

The government, for its part, contests Carrington's characterization of the relevant period of custody.  Under the statute's plain terms, the government argues, the four-month period enumerated in § 4241(d)(1) begins when a defendant is hospitalized, not when he is committed to the Attorney General's custody.  This means that the relevant period for our timeliness analysis began on January 18, 2022, and ended on May 26, 2022—a total of four months and eight days.  And on the government's view, an eight-day delay was not unreasonable.  Alternatively, the government argues that Carrington failed to raise this objection in the court below and has forfeited his right to raise it now.

We agree with the government that Carrington has forfeited this argument. Carrington did not challenge any alleged custody delays during the civil-commitment proceedings below.  Unlike the defendant in *Wayda*, Carrington never moved to dismiss the civil-commitment certificate or otherwise challenged the Eastern District's authority to order his civil commitment on account of the alleged delay.  Instead, he raises the issue for the first time on appeal.  "Our settled rule is simple:  '[a]bsent exceptional circumstances, . . . we do not consider issues raised for the first time on appeal.'"  *In re Under Seal*, 749 F.3d 276, 285 (4th Cir. 2014) (alteration in original) (quoting *Robinson v. Equifax Info.*

5

*Servs., LLC*, 560 F.3d 235, 242 (4th Cir. 2009)).  The district court was not responsible for flagging this issue *sua sponte*; Carrington had to bring it to the court's attention.  In failing to do so, he forfeited his right to litigate it on appeal.

Still, Carrington insists that he preserved this argument by objecting to the delay in his *criminal* proceedings in the Middle District.  He reads our decision in *United States v. Curbow*, 16 F.4th 92 (4th Cir. 2021), to establish the rule that a litigant preserves any objection to unreasonable delays in his § 4241(d) custody for purposes of his civil-commitment proceedings if he objects to them during his criminal proceedings.  And he believes he followed *Curbow* to the letter by raising this timeliness issue in the Middle District.

The problem is that Carrington's theory misunderstands our holding in *Curbow*. *Curbow* involved three periods of delay in the defendant's custody.  *Id.* at 103.  We held that "the proper time and place to contest the alleged unreasonable delays in the *first and second periods* of Curbow's § 4241(d) custody was during the [criminal] proceedings and in the [criminal] court." *Id.* at 115 (emphasis added).  But we did not apply this rule to the *third* period of custody that immediately preceded the filing of the § 4246 certificate.  To the contrary, in both *Wayda* and *Curbow*, the defendants raised their objections to this period during their civil-commitment proceeding*s*, and we then scrutinized those delays on the merits.  *See id.* at 102, 109–13; *Wayda*, 966 F.3d at 300, 304–09.  Thus, while challenges to earlier periods of custody must be raised in the criminal court, challenges to

the period immediately preceding the filing of the § 4246 certificate can and must be raised in the civil-commitment court.[1]

Carrington's forfeiture of the delay argument, however, doesn't automatically mean we cannot consider the argument. In narrow circumstances we can still reach the newly raised argument and reverse the lower court as a result. *Under Seal*, 749 F.3d at 285. But that's "only if the newly raised argument establishes 'fundamental error' or a denial of fundamental justice." *Id*. (quoting *Stewart v. Hall*, 770 F.2d 1267, 1271 (4th Cir. 1985)). This standard is even more stringent than the plain-error review we apply in criminal cases. *Id.* So, when a party cannot show plain error, they cannot establish fundamental error. *Id.*; *see United States v. Olano*, 507 U.S. 725, 730 (1993) (holding that under plain-error review, a court cannot reverse unless (1) there is an error, (2) it is plain, (3) it affects substantial rights, and (4) we determine that it "seriously affect[s] the fairness, integrity or public reputation of judicial proceedings." (alteration in original) (quoting *United States v. Young*, 470 U.S. 1, 15 (1985))).

Carrington cannot vault this high bar to relief. For even if there is an error below, that error is not plain. If the government is correct and the § 4241(d)(1) time limit begins

---

[1] And even if we were to accept Carrington's reading of *Curbow* (which we do not), we doubt that he has satisfied its requirements. When we said in *Curbow* that a litigant must challenge § 4241(d) delays in the criminal court, we meant *actually challenge*—that is, a litigant must request some form of relief from the court. 16 F.4th at 115; *Carrington*, slip op. at 11–12. Carrington never asked the Middle District for any relief regarding the alleged delays in his custody. Instead, he merely asked the court to note his objections on the record "for the purpose of further motion" in the civil-commitment proceedings (which he ultimately never filed). *Carrington*, slip op. at 16. Simply noting one's objections on the record, without requesting any relief from the court, does not amount to "contest[ing]" the alleged delays. *See Curbow*, 16 F.4th at 115.

7

when a defendant is hospitalized, then the eight-day delay in Carrington's custody was not plainly unreasonable. *See Curbow*, 16 F.4th at 112–13 (finding that a forty-nine-day period of custody was not unreasonable). So the only remaining question is whether it is plainly erroneous to conclude that the four-month period established § 4241(d)(1) kicks in only once the defendant is hospitalized. It is not. Neither *Wayda* nor *Curbow* clearly answered this particular question.[2] But the text of the statute can be reasonably read to tie this time limit to the start of hospitalization, not commitment. *See* 18 U.S.C. § 4241(d)(1). And we have treated hospitalization as the start date on at least one occasion, albeit in an unpublished opinion. *See United States v. Flannery*, No. 88-5605, 1989 WL 79731, at *3–4 (4th Cir. July 13, 1989) (measuring the § 4241(d)(1) period from the start of hospitalization and explaining that "the statute provides only that the examination must occur within four months"). We do not, and need not, resolve this thorny issue today. Merely noting the lack of binding case law on this question and the reasonable arguments against Carrington's position is enough to show that there is not a fundamental miscarriage

---

[2] As Carrington suggests, we did say in *Wayda* that "our civil commitment framework 'imposes a clear start and end point during which the government must initiate civil commitment proceedings: the period of time in which that person is in the custody of the federal government.'" 966 F.3d at 304 (quoting *United States v. Searcy*, 880 F.3d 116, 122 (4th Cir. 2018)). And we did treat the expiration of the § 4241(d) time limit as the point at which legitimate custody for purposes of § 4248 (and § 4246) ends. *See id.* at 304–05. But we did not plainly state whether those limits begin at the time of commitment or the start of hospitalization. Furthermore, in *Curbow*, the district court measured the start of the § 4241(d) custody from the start of hospitalization, and we did not correct this finding on appeal. *See* 16 F.4th at 107. None of this is to decide this difficult question today. It only goes to show that our case law has not squarely resolved this particular issue.

8

of justice here.  We therefore cannot excuse Carrington's forfeiture of his timeliness objection.

*          *          *

Carrington expresses understandable frustration at the prospect of batting zero for two on appeal.  Yet this is not a sign of manifest injustice but rather a consequence of our procedural rules.  Put simply:  Jurisdiction and party presentation matter.  These rules limit our ability to reach certain issues as a result of either congressional decree or the judicial policy that parties ought to fully litigate difficult questions in courts below.  True, applying the rules sometimes leads to harsh outcomes.  But the rules themselves are not fundamentally unfair.  Parties need only comply with them to obtain relief.[3]

Carrington objects to what he believes was an unreasonable delay in his § 4241(d) custody.  But we find that he did not raise this issue in the court below and that we cannot excuse this forfeiture.  Thus, the district court is

*AFFIRMED.*

---

[3] To the extent that Carrington thinks his counsel's failure to raise material issues in the court below amounted to ineffective assistance, nothing in this opinion should be interpreted to foreclose further relief.  *Cf.* 28 U.S.C. § 2241; Fed. R. Civ. P. 60(b).

9

TOBY HEYTENS, Circuit Judge, concurring:

I join the Court's opinions in this case and in the related appeal in Carrington's criminal case (No. 22-7138). In my view, the approach taken in those opinions is consistent with the language of the relevant statutes, harmonizes this Court's precedent, and provides clear guidance about how these sorts of issues should be litigated going forward.

I write separately to emphasize two points. First, neither of our decisions rejects Carrington's arguments about unreasonable delay on the merits. Second—as the Court's opinion observes in footnote 3—neither decision prevents Carrington from seeking relief based on his lawyers' failure to raise the delay issue in the civil case.

To be sure, our Court's previous decisions in this area have not been a model of clarity. For that reason, it is easy to see how a reasonable lawyer might have understood our earlier decisions to require objecting to delays in Section 4241(d) custody during the criminal proceedings. See *United States v. Ryan*, 52 F.4th 719, 722 (8th Cir. 2022) (so interpreting this Court's decision in *United States v. Curbow*, 16 F.4th 92 (4th Cir. 2021)). Conversely, a reasonable lawyer might also have reached the same conclusion the Court does today: that the proper time and place to object to the delay alleged here was in the civil court during civil commitment proceedings. See generally *Curbow*, 16 F.4th at 92 (evaluating objection to delay in civil commitment proceedings raised in civil court on the merits); *United States v. Wayda*, 966 F.3d 294 (4th Cir. 2020) (same).

What I cannot fathom is why one would follow the course Carrington's lawyers did here. In the criminal court, counsel preserved an objection to the delays in Carrington's custody without asking for any remedy, stating instead that they were doing so "*for the*

10

*purpose of* [a] further motion properly filed in the . . . civil proceedings." JA 292 (No. 22-7138) (emphasis added). But then, in the civil proceeding, Carrington's (different) lawyers never raised the delay issue at all, much less argued that those delays made him ineligible for civil commitment. And that failure, in turn, led directly to both the district court and this one not considering the merits of any delay claim.

This series of events raises obvious questions about the quality of representation Carrington received before the district court. Whether those questions would warrant reopening the civil court's judgment under Federal Rule of Civil Procedure 60(b)(6) or support a habeas petition based on ineffective assistance of counsel under 28 U.S.C. § 2241 is something this Court need not decide now. See *Pressley Ridge Schs. v. Shimer*, 134 F.3d 1218, 1222 (4th Cir. 1998) (declining to remand a case "with specific instructions that the district court consider a request for vacatur" because the appellant "ha[d] not requested th[at] precise relief"). I note, however, that these two appeals are not necessarily the end of the road for Carrington and caution that the Court's decisions should not be interpreted as concluding the concerns he raises lack merit.